Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence, Tex. Bar No. 24087896
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Email: jason.rudd@wickphillips.com
scott.lawrence@wickphillips.com

***COUNSEL TO KRISTEN KRZYZEWSKI, TREMBLANT CONSULTANTS, LLC, TRUE LTC LLC, TRUE LTC LEAD ACO, LLC, TRUE LTC HOLDINGS GROUP, LLC, TRUE LTC ADMINISTRATIVE SERVICES, LLC, CAROL BAUER, RYAN ROMANO, JILL FORD, AND MAUREEN WARD***

Emily Wilbur (*pro hac vice)*
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
Email: ewilbur@beneschlaw.com

Noelle Torrice (*pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
1313 N. Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Email: ntorrice@beneschlaw.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| GENESIS HEALTHCARE, INC., et al., | Case No. 25-80185 (SGJ) |
| Debtors. | (Jointly Administered) |
| LTC ACO LLC, GENESIS HEALTHCARE LLC, and GENESIS HEALTHCARE, INC.,<br><br>Plaintiffs,<br>v.<br><br>KRISTEN KRZYZEWSKI, an individual; TREMBLANT CONSULTANTS, LLC, a Maryland limited liability company; TRUE LTC LLC, a Wyoming limited liability company; TRUE LTC LEAD ACO, LLC, a Wyoming limited liability company; TRUE LTC HOLDINGS GROUP, LLC (f/k/a LEAD LTC Holdings Group, LLC), a Wyoming limited liability company; TRUE LTC ADMINISTRATIVE SERVICES, LLC, a Wyoming limited liability company; CAROL BAUER, an individual; RYAN ROMANO, an individual; JILL FORD, an individual; MAUREEN WARD, an individual.<br><br>Defendants. | Adv. Proc. No. 26-08012-sgj |

# APPENDIX IN SUPPORT OF DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

| Appendix Exhibit | Description | Page |
|---|---|---|
| A. | Kryzweski February 28, 2026 email re: Record Retention | TRUE Appx 001 |
| B. | Kryzweski Affidavit in Support of Defendants Brief in Opposition to Plaintiffs' Emergency Motion for Preliminary Injunction | TRUE Appx 003 |

Dated: September 2, 2025

Respectfully submitted,

*/s/ Scott D. Lawrence*

Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence, Tex. Bar No. 24087896
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Email: jason.rudd@wickphillips.com
scott.lawrence@wickphillips.com

Noelle Torrice (*pro hac vice*)
Benesch, Friedlander, Coplan & Aronoff LLP
1313 N. Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Email: ntorrice@beneschlaw.com

Emily Wilbur (*pro hac vice*)
Benesch, Friedlander, Coplan & Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
Email: ewilbur@beneschlaw.com

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 2, 2025, a true and correct copy of the foregoing document was served by the Court's ECF noticing system on all parties that consent to such service via electronic filing.

*/s/ Scott D. Lawrence*

# EXHIBIT A

---------- Forwarded message ---------
From: **Kristen Krzyzewski** <kristenkrz@gmail.com>
Date: Sat, Feb 28, 2026 at 3:42 PM
Subject: Record Retention
To: rochelle.moore@genesishcc.com <rochelle.moore@genesishcc.com>

Rochelle,

Regarding the Certification of Destruction and Limited Waiver, I have been advised that a contractual waiver of Section 11 of the Agreement from LTC ACO does not waive federal statutory access rights. As a result, Tremblant Consultants LLC must retain its records for the required period while continuing to honor all confidentiality obligations as required under Section 8 of the Agreement. These records will be maintained securely until the expiration of the required term, at which point they will be promptly destroyed.

As of February 11, 2026, my LTC ACO records were copied to the designated "Transitioned Executive" shared drive created by GHC, providing GHC and ACO-designated personnel with the full access requested.

Please let me know if you have any questions. It has been a pleasure working with you and the team.

Thank you.

Kristen Krzyzewski
Tremblant Consultants LLC
443.365.8088
kristenkrz@gmail.com

# EXHIBIT B

Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence, Tex. Bar No. 24087896
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Email: jason.rudd@wickphillips.com
scott.lawrence@wickphillips.com

***COUNSEL TO KRISTEN KRZYZEWSKI, TREMBLANT CONSULTANTS, LLC, TRUE LLC, TRUE LEAD ACO, LLC, TRUE HOLDINGS GROUP, LLC, TRUE ADMINISTRATIVE SERVICES, LLC, CAROL BAUER, RYAN ROMANO, JILL FORD, AND MAUREEN WARD***

Emily Wilbur (admitted *pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
Email: ewilbur@beneschlaw.com

Noelle Torrice (admitted *pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
1313 N. Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Email: ntorrice@beneschlaw.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| GENESIS HEALTHCARE, INC., et al., | Case No. 25-80185 (SGJ) |
| Debtors. | (Jointly Administered) |
| LTC ACO LLC, GENESIS HEALTHCARE LLC, and GENESIS HEALTHCARE, INC., | |
| Plaintiffs,<br>v. | Adv. Proc. No. 26-08012-sgj |
| KRISTEN KRZYZEWSKI, an individual; TREMBLANT CONSULTANTS, LLC, a Maryland limited liability company; TRUE LTC LLC, a Wyoming limited liability company; TRUE LEAD ACO, LLC, a Wyoming limited liability company; TRUE LTC HOLDINGS GROUP, LLC (f/k/a LEAD LTC Holdings Group, LLC), a Wyoming limited liability company; TRUE ADMINISTRATIVE SERVICES, LLC, a Wyoming limited liability company; CAROL BAUER, an individual; RYAN ROMANO, an individual; JILL FORD, an individual; MAUREEN WARD, an individual. | |
| Defendants. | |

**AFFIDAVIT OF KRISTEN KRZYZEWSKI IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

I, Kristen Krzyzewski, declare as follows:

**I. Background and Qualifications**

1. I, Kristen Krzyzewski, am over the age of eighteen (18) and am competent to make this affidavit. The facts stated herein are within my personal knowledge and are true and correct.

2. I am the founder of True LTC, LLC, True LTC Lead ACO, LLC, True LTC Holdings Group, LLC (f/k/a LEAD LTC Holdings Group, LLC), and True LTC Administrative Services, LLC (collectively, "True").

3. I joined LTC ACO LLC ("LTC ACO") in approximately 2015 as a consultant. Over the course of my engagement, I served in roles of increasing responsibility, ultimately holding the positions of Chief Strategy Officer, member of the Board of Managers, and Acting President.

4. In 2019, I entered into a Consulting Agreement with Genesis HealthCare LLC ("Genesis"), which was amended on May 1, 2023 to revise the Genesis contracting party to LTC ACO, LLC, through my consulting company, Tremblant Consultants, LLC ("Tremblant"). Tremblant is not solely owned by me; my husband, David Yalowitz, is another member who provides Medical Director consulting services entirely unrelated to my LTC ACO work.

5. Because I was engaged as an independent consultant and not an employee, I was never provided a company-owned laptop. Throughout my approximately decade-long tenure with LTC ACO, I maintained all of my work files on my personal laptop, which belonged to Tremblant. This arrangement was known to and permitted by Genesis at all times. I was also never asked to complete compliance training, consistent with my status as an independent consultant rather than a Genesis employee.

6. LTC ACO was largely built and made successful under the leadership of the co-founding CEO, me as a co-founder, and the team we assembled. Under our leadership, LTC ACO

generated hundreds of millions of dollars in shared savings annually since 2018 and achieved per-beneficiary savings that rank among the highest nationally. The business depended on trusted, long-term relationships between ACO leadership and participating provider practices—relationships I personally cultivated over many years.

**<u>II. The Leadership Crisis at LTC ACO Under Genesis Management</u>**

7. Beginning in January 2025, LTC ACO experienced a series of leadership upheavals. In January 2025, Genesis terminated Jason Feuerman, the co-founding CEO of LTC ACO, without consulting the remaining ACO leadership. Genesis then assigned Alexander Shaine ("Al Shaine"), a non-ACO leader, to serve as CEO, again without consulting the remaining ACO leadership team.

8. In July 2025, Genesis Healthcare and its subsidiaries, including LTC ACO, declared Chapter 11 bankruptcy.

9. In the fall of 2025, I worked with MWS on the motion submitted to the court on October 16, 2026 (Dkt. No. 1308) in support of payment of 50% of the ACO profit-sharing obligations earned for Performance Year 2024, in which Russell Perry, the Co-Chief Restructuring Officer declared "Each of the Participants is crucial to obtaining the incredible results that LTC ACO has been able to achieve. I believe that the failure to provide incentives to the Participants would threaten the continued success of the ACO. Moreover, the loss of Participants would negatively impact the LTC ACO business model, which I understand to be built on relationships and a proven track record of improving care while decreasing costs. This would ultimately negatively impact the Debtors and value for all of their creditors and stakeholders." The court approved that motion without objection on November 6, 2025. That same month, Al Shaine resigned as ACO CEO.

10. Brittain Brantley was hired as ACO Chief Operating Officer effective on or around August 1, 2025.

11. The profit-sharing program at LTC ACO was created in 2023. It was reviewed and approved by David Harrington, Executive Chairman of Genesis, with executed agreements countersigned by Genesis General Counsel, Susan Overton. [redacted] I did this because it was important to me that the company honor its written obligations to its employees, I believed those employees had earned it by delivering superior performance, and I was motivated to retain the ACO's key talent for the benefit of LTC ACO.

12. [redacted]

13. In January 2026, I sent an email warning that competitors were actively recruiting key team members and that employee retention was at serious risk. This warning came in the wake of the departure of our VP of Data Analytics, who left for a direct competitor. My warnings were ignored. Instead, Genesis took precisely the action I had advised against: installing Mr. Brantley as Acting ACO Executive.

## III. My Departure from LTC ACO

14. I gave notice of my resignation on approximately February 4, 2026. My resignation letter documented the risk that the lack of clarity on future profit-sharing payments and the damage from Mr. Brantley's leadership posed to the ACO. I did so in an effort to protect the organization from obvious and foreseeable risks.

15. On my last business day, February 27, 2026, I informed my professional contacts of my departure while assuring them that they remained in good hands with the LTC ACO team. I took affirmative steps to ensure a smooth transition, including transferring all of my files from my Tremblant Consultants files to the "Transitioned Executive" Genesis/LTC ACO Google drive and supporting team members through the transition period.

## IV. The File Transfer Activity –Downloads *to* the LTC ACO Google Drive

16. On February 11, 2026, at the direction of Genesis IT, I uploaded all of my LTC ACO files from my personal Tremblant laptop and OneDrive cloud to the designated "Transitioned Executive" shared folder on the Genesis/ACO shared drive. I did this to ensure a smooth transition of my work product to LTC ACO.

## V. Record Retention Obligations Under the Consulting Agreement

17. Section 11 of the Tremblant Consulting Agreement, incorporating 42 U.S.C. § 1395x(v)(1)(I), required me to *maintain consulting records for four (4) years following termination* of the Agreement.

18. When Genesis IT demanded that I destroy my files, I flagged this compliance issue to Genesis legal counsel. I could not simply destroy records that I was legally and contractually obligated to retain.

19. Genesis legal counsel drafted a limited waiver to address this issue. However, the limited waiver did not fully relieve me of my statutory record-retention obligations under federal law.

20. On February 28, 2026, my last day with LTC ACO, I emailed Genesis legal counsel, Rochelle Moore, explaining that I could not sign the limited waiver because it did not fully relieve me of my contractual obligations, and confirming that I would honor all confidentiality obligations under the Consulting Agreement and maintain my files securely. Rochelle Moore confirmed receipt of my email on March 1, 2026. My email is attached as Exhibit A to the Opposition and I can attest to its authenticity and genuineness.

21. To ensure the security of the documents I was obligated to retain, I subsequently offloaded the documents to a USB drive and placed it in a physical safe, where it has remained.

22. During my review of my personal computer to ensure compliance with the Stipulation and Agreed Order to Maintain the Status Quo, I identified four additional LTC ACO documents that had remained on my computer. I was unaware these documents existed, and I did not use them. I immediately sent them to counsel and deleted them from my computer. All such documents have since been turned over to counsel.

## VI. Formation and Operation of True

23. Contrary to Plaintiffs' allegations, Genesis' potential buyer, 101 W State Street Holdings ("101 W State Street") contacted me in or around April 2026 to discuss potentially rejoining LTC ACO. Given my tenure with LTC ACO, I spent considerable time and effort negotiating in good faith a potential return to LTC ACO with 101 W State Street. This time and effort spent with 101 W State Street could have been poured into True. Unfortunately, the

negotiations were for naught as it was Genesis that prevented LTC ACO from rehiring me and the team that made it profitable in the first place.

24. On March 4, 2026, I formed LEAD LTC Holdings Group, LLC to explore the new LEAD ACO model – a program in which LTC ACO did not participate. On April 17, 2026, the company name was changed to True Holdings Group, LLC, and the other True entities were formed on or about March 18, 2026, March 25, 2026, and April 1, 2026.

25. Before proceeding with True, I evaluated multiple offers to join competing ACOs. I ultimately decided to start my own organization because I believed I could better serve the long-term care provider community based on my decade of experience.

26. True was funded entirely by my personal capital. From its inception, True has operated transparently. I openly identified myself as "Founder & CEO, True LTC, The Long-Term Care ACO Experts" in all correspondence from my True email address. There was not nor has there been any attempt to conceal my identity or my involvement.

27. For the initial June 23, 2026 CMS MSSP ACO filing deadline, all that was required was a legal business entity, a taxpayer identification number (TIN), selections about program track, minimum savings rate/minimum loss rate, beneficiary assignment methodology, draft repayment mechanism, banking information, and one provider contract. We used the template provided by CMS in Exhibit A of the "ACO Participant List and Participant Agreement Guidance" (April 2026, Version #15), supplemented using AI tools and our attorneys for this purpose. We executed that initial agreement with one of our existing True legal entities on or about June 19, 2026.

**VII. True's Use of Commercially Available Data**

28. True did not rely on any proprietary LTC ACO data or models. True instead relied on the decade-long experience of its employees, CMS publicly available data and purchased databases.

29. In fact, True purchased data from Milliman, a well-known actuarial and consulting firm that provides consulting, data analytics, and software tools to help provider groups, ACOs, and health systems manage risk, analyze claims, and optimize value-based care performance.

30. True purchased tools from Milliman, the ACO Builder Forecast MSSP and the ACO Builder Institutional Explorer MSSP, which consolidate provider data into one comprehensive, up-to-date dataset representing all U.S.-based providers and group practices, including billing and servicing NPI, place of service, provider/clinician, group practice, clinic/location, and affiliation metrics; and that provides future projections into the performance year to forecast shared savings or loss, allowing an ACO to determine alignment with CMS's projections.

31. True also considered falconhealth.ai as a data source. Despite falconhealth.ai being significantly cheaper, its inability to conduct a full benchmark estimation was a sufficient drawback to justify using Milliman instead.

32. CMS regulatory information and publicly available data were also used for financial parameters. True's discussions with prospective participants consistently referenced publicly available CMS program details such as benchmark methodology changes, the LEAD program's 1.5% add-on for eligible participants, and risk adjustment model recalibrations, rather than any proprietary LTC ACO data.

33. True's targeted benchmark was created based on my own experience in the industry, specifically my knowledge of the competitors' publicly available benchmark data supplemented by feedback from providers and other competitors with whom I had relationships to ensure that our benchmark would be attractive in the marketplace.

34. True purchased targeting data that cast a wide net of long-term care and assisted living primary care practices. This data included some LTC ACO groups and many non-LTC ACO groups, and contact information was sourced using LinkedIn and publicly available NPI databases.

**VIII. True Competes Fairly**

35. I was not subject to any non-compete or non-solicitation covenant under the Consulting Agreement. Accordingly, my contacting former colleagues and discussing opportunities at True was entirely lawful and permitted.

36. A number of provider groups reached out to me directly. These groups contacted me because of my reputation and expertise in the long-term care ACO space.

37. True never implied that LTC ACO could not pay its shared savings obligations. Rather, when asked about LTC ACO's financial situation, I consistently referenced the Bankruptcy Court's Day First Day Orders and the buyer's commitment to the ACO business.

38. True has only two provider groups with a TIN overlap with LTC ACO.

39. True will always honor provider wishes regarding CMS filings and would never refuse to remove a TIN if instructed by the provider group.

**XII. True Provides The Only ACO For Certain TINs For The 2027 Year**

40. True is at its inception. The 2027 performance year would be True's first opportunity to generate revenue and recoup the significant personal investment I have made.

41. Extensive time and resources have been expended in creating True, including securing data subscriptions, negotiating with provider groups, filing with CMS, and building the operational infrastructure necessary to serve Medicare beneficiaries.

42. Physicians and physician groups that are prepared to practice under True for the 2027 performance year would be harmed if True could not participate. If a participant TIN is listed on True's participant list alone—meaning there is no overlap with another ACO—those providers would have no alternative ACO for the 2027 performance year.

43. In fact, there are eleven TINs currently listed on True's list for the 2027 performance year who have no alterative ACO. Therefore, those providers would be precluded from operating under an ACO for the 2027 calendar year and their patients would be unable to continue to receive Medicare ACO services from those providers if True were forced to cease operations

I declare under penalty of perjury that the foregoing is true and correct.

Signed by:
Kristen Krzyzewski
28E3EEFBB29D47F...
Kristen Krzyzewski

Date: 9/1/2026

docusign

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 93CD0E75-F484-8001-8135-6ED844DBB7E4 | | Status: Completed |
| Subject: Complete with Docusign: DRAFT - Affidavit ISO Oppo.pdf | | |
| Source Envelope: | | |
| Document Pages: 10 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 4 | Initials: 0 | Noelle Torrice |
| AutoNav: Enabled | | 127 Public Square |
| EnvelopeId Stamping: Enabled | | Suite 4900 |
| Time Zone: (UTC-05:00) Indiana (East) | | Cleveland, OH 44114 |
| | | ntorrice@beneschlaw.com |
| | | IP Address: 163.116.157.55 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original<br>9/1/2026 11:25:42 PM | Holder: Noelle Torrice<br>ntorrice@beneschlaw.com | Location: DocuSign |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Kristen Krzyzewski<br>kristenk@trueltc.com<br>Security Level: Email, Account Authentication (None) | <br>Signature Adoption: Pre-selected Style<br>Using IP Address: 96.244.78.82 | Sent: 9/1/2026 11:26:42 PM<br>Viewed: 9/1/2026 11:48:20 PM<br>Signed: 9/1/2026 11:49:38 PM |

**Electronic Record and Signature Disclosure:**
Accepted: 9/1/2026 11:48:20 PM
ID: 13ad470a-0a9f-4ab6-a87d-6d9401a88720

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/1/2026 11:26:42 PM |
| Certified Delivered | Security Checked | 9/1/2026 11:48:20 PM |
| Signing Complete | Security Checked | 9/1/2026 11:49:38 PM |
| Completed | Security Checked | 9/1/2026 11:49:38 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

## Electronic Record and Signature Disclosure

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Benesch Law (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Benesch Law:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: bthorne@beneschlaw.com

**To advise Benesch Law of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at bthorne@beneschlaw.com and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Benesch Law**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to bthorne@beneschlaw.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Benesch Law**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to bthorne@beneschlaw.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to ‘I agree to use electronic records and signatures’ before clicking ‘CONTINUE’ within the DocuSign system.

By selecting the check-box next to ‘I agree to use electronic records and signatures’, you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Benesch Law as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Benesch Law during the course of your relationship with Benesch Law.